## THE KINGSTON.

(District Court, W. D. New York. August 28, 1909.)

1. Collision (§ 107*)—Rules for Preventing Collisions—Starboard Hand Rule.

The fact that each of two vessels approaching on converging courses knows the destination of the other, and that their courses do not cross, does not affect the application of the starboard hand rule, which, as prescribed by rules 18 and 20 of the navigation rules for the Great Lakes (Act Feb. 8, 1895, c. 64, 28 Stat. 648, 649 [U. S. Comp. St. 1901, p. 2891]), requires the vessel having the other on her own starboard side to keep out of the way, and the other, as the privileged vessel, to keep her course and speed.

[Ed. Note.—For other cases, see Collision, Cent. Dig. § 224; Dec. Dig. § 107.*]

2. Collision (§ 107*)—Rules for Preventing Collisions—Construction.

Rule 20 of the navigation rules for the Great Lakes (Act Feb. 8, 1895, c. 64, 28 Stat. 649 [U. S. Comp. St. 1901, p. 2891]), which requires the privileged of two vessels to keep her course and speed, is subject to exception, by the terms of rules 27 and 28, where special circumstances render a departure from it necessary, in the exercise of good seamanship, to avoid immediate danger, and in such case the observance of it is a fault.

[Ed. Note.—For other cases, see Collision, Cent. Dig. § 224; Dec. Dig. § 107.*]

3. Collision (§ 40*)—Steam Vessels—Fault—Violation of Rules.

The steamers Kingston and Titania approached the entrance to the mouth of the Genesee river in the evening, at about the same time, the Kingston from the north and the Titania from an easterly direction, and a collision occurred shortly after they entered the channel. Held, under the evidence, that the Kingston entered first, and that the initial fault was that of the Titania, which, under the starboard hand rule, as the burdened vessel, was bound to keep out of the way, but which approached at a speed of 8 miles an hour, and in rounding into the channel negligently ran into the Kingston; that the Kingston was chargeable with contributory fault in maintaining an excessive speed of 10 miles, and in not giving alarm signals, or sooner stopping and reversing, when it became apparent that the Titania was being negligently navigated.

[Ed. Note.—For other cases, see Collision, Cent. Dig. § 40; Dec. Dig. § 40.*]

In Admiralty. Suit for collision by Frank Fix and Charles Fix, as owners of the steamer Titania, against the steamer Kingston. Decree for division of damages.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

White & Stanley and Frank S. Masten, for libelants.
Brown, Ely & Richards, for respondent.

HAZEL, District Judge. The Canadian passenger steamer Kingston, 300 feet over all, bound from Kingston, Ontario, to the port of Charlotte, N. Y., came in collision with the steamer Titania, 106 feet long, with passengers on board, on August 11, 1908, at about 10:30 o'clock p. m., between the piers at the entrance to the Genesee river, near Charlotte. The starboard side of the Titania was crushed, and, rapidly filling with water, she sank. She had been engaged in making two or three trips daily during the summer season from Sea Breeze, to Charlotte, N. Y. The Kingston was proceeding up the river to her landing. It was a clear, moonlight night, and each vessel was seen by the other, when out in the open lake, approaching the entrance to the river on convergent courses. Each vessel knew the destination and proper and usual course of the other. The east pier light and west pier light, which projected about 500 feet farther out into the lake than the former, could be plainly seen by persons on the decks of the vessels. There was careless seamanship on the part of one or both of the steamers. Neither signaled the other.

The libelants claim, and testimony has been given in support thereof, that when the Titania was about 1,000 feet distant from the east pier, and heading so that she would pass outside of the light on the west pier, she turned into the channel, which was not less than 500 feet wide, and straightened in her course parallel with the piers. Her master testified that at this time the Kingston was 100 or 150 feet astern, overtaking him, at the rate of 16 miles per hour, a rate of speed twice that of the Titania; that without blowing any signal, or giving any warning of her movements, she overtook the Titania, passed ahead, and, while passing, her suction or swells deflected the course of the Titania, forcing her bow laterally into the paddle box of the Kingston, with the result that, after drifting a short distance, she rapidly filled with water, and without loss of life sank to the bottom of the river. It is uncontroverted that she sank about 467 feet south of the east pier light and 115 feet to the westward of the east pier, which is located 105 feet east of the middle of the river.

The position of the respondent, briefly stated, is that the collision occurred before the Titania had straightened in the channel; that she was not moving in a straight course, parallel with the piers or with the Kingston, but, on the contrary, that she came in contact with the paddle box of the Kingston, which was the ahead steamer, on an oblique or diagonal course. It is also claimed that the Titania, by reason of her greater speed just prior to the collision, and her proximity to the east pier when making the necessary detour into the channel, overtook the Kingston, which had then checked her speed, and then negligently sheered four points out of her course to westward and into the Kingston. It is shown that immediately after the impact the Kingston stopped her engines, whistled to the lifeboats, and then backed to stop her headway.

The libelants specifically charge that the collision was occasioned by the sole fault of the Kingston, first, for attempting to overtake the

Titania in a harbor of less than 500 feet without first signaling for permission to do so; second, for steering her course so close to the Titania; and, third, for navigating up the channel at an excessive rate of speed. The Kingston alleges that the collision was occasioned by the primary fault of the Titania, in that, first, her navigators had no lookout; second, that she proceeded at a high and dangerous rate of speed; third, in not checking, when rounding the east pier; fourth, in not straightening up and keeping out of the way of the Kingston. There is testimony tending to show that each vessel had been overtaken by the other.

The libelants invoke rule 25 of the White law, approved February 8, 1895 (Act Feb. 8, 1895, c. 64, 28 Stat. 649 [U. S. Comp. St. 1901, p. 2891]), which prohibits a steam vessel passing another going in the same direction in rivers less than 500 feet wide, unless the overtaken vessel has signified her willingness to such a movement, or unless she is disabled. There is much conflict in the testimony as to whether the Titania entered the channel between the piers before the Kingston. It is insisted that she did enter the channel first, and had straightened in her course. If this claim has been established by the libelants, it follows that the Kingston clearly and flagrantly violated the statutory rule just mentioned.

On the other hand, the respondent alleges that, as the vessels were approaching the entrance to the river on convergent courses, rules 18, 20, and 21 of the White law govern the disposition of this controversy. The eighteenth rule provides that, when two vessels are crossing, so as to involve risk of collision, the vessel which has the other on her starboard side shall keep out of the way of the other; while rule 20 requires the vessel on the starboard side to keep her course and speed, and the twenty-first rule provides as follows:

"Every steam vessel, which is directed by these rules to keep out of the way of another vessel, shall on approaching her, if necessary, slacken her speed or stop or reverse."

If these statutory provisions apply to the facts under inquiry, it is manifest that the Titania violated them. At the oral argument both sides practically claimed that the starboard hand rule did not apply, inasmuch as each vessel knew the destination of the other, and that their courses were not crossing. In the brief of respondent, however, filed after the oral argument, it is contended that, as the courses of the steamers were convergent, the Kingston became the privileged vessel, and the Titania was obliged to navigate in obedience to the eighteenth rule. After carefully considering the evidence in relation to the movements of the vessels and their position at the time of collision, I conclude that the contention of the Kingston in this respect must be sustained. It makes no difference that each vessel presumably or actually knew the destination and course of the other and that neither vessel would cross the other's bow. The Kingston was coming from the north, and heading nearly straight for the channel, and she was perceived by the master of the Titania when the latter vessel was 1,000 feet to the eastward. The Titania was making for the channel from the east, steering on a N. W. ½ N. course. After making the turns, she steered in a southwesterly direction.

Irrespective of whether such detour was made at the point claimed by the libelants, or much closer to the east pier, as is contended by the Kingston, I think the courses of the steamers to the entrance of the river were slanting or oblique when they became factors in each other's navigation, and therefore that they approached each other on crossing courses. The Titania, being the burdened vessel, was obliged to keep out of the way of the Kingston, which was approaching the river from the north on her right side. The John McCullough, 145 Fed. 501, 76 C. C. A. 261; The Deveaux Powell and the Lackawanna, 165 Fed. 635, 92 C. C. A. 54.

The weight of the evidence establishes that the Titania was not in the channel ahead of the Kingston, and that rule 25, regulating the manner of passing a vessel in a channel less than 500 feet wide, did not apply. On the other hand, the testimony of the Kingston preponderatingly shows that the Titania turned into the channel much closer to the east pier than 300 feet. Indeed, when the bow of the Kingston was abreast of the east pier light, the Titania was on a diagonal course, proceeding at the rate of 8 miles an hour, close to the east pier light. Such maneuvering at the specified rate of speed, in view of the proximity of the Kingston, a much larger vessel, was a fault, and the Titania must be condemned for not keeping out of the way of the Kingston, and for failing to slacken her speed, or seasonably stopping or backing to avoid collision.

Did the Kingston contribute to the collision to such an extent as to warrant a division of the damages? She was properly manned and equipped, with master and lookout on deck. Capt. Esford testified that, when the Kingston was abreast of the west pier light, the Titania was about 200 feet off the east pier light; that he first noticed the Titania when he went on the bridge to relieve the second officer about a half hour before the collision. He says that, when about three boat lengths from the west pier, he checked the Kingston's speed, which was then about 16 miles an hour. He further testified that, when abreast of the west pier, the Kingston was moving at the rate of 10 miles per hour. He observed the Titania going faster than the Kingston, and when the latter vessel was abreast of the east pier light the Titania was "coming at him at right angles." The libelants contend that the speed of the Kingston was 16 miles an hour at the time of the collision; but giving consideration to all the evidence on this point, pro et contra, prompts the belief that she was proceeding at not much less than 10 miles an hour, which, in view of the circumstances, I deem to have been excessive.

It is true, as claimed by counsel for respondent, that ordinarily the privileged vessel is not required to reduce her speed, except in extremis; but I think the situation here demanded more than ordinary precaution by the Kingston, and a departure from rule 20 of the laws relating to navigation of vessels on the Great Lakes and their connecting and tributary waters should have been made. The experienced master of the Kingston must have been aware that the Titania was not approaching the channel in the usual and ordinary way. It seemed clear to him that she was rounding the east pier light altogether too close, in view of the proximity of the Kingston. In that relation he

was required to apply good sense to the navigation of his vessel. He should not have ignored rules 27 and 28 of the White law, which substantially provide that due regard shall be had to all dangers of navigation and collision, and to any special circumstances which, to avoid danger, may demand a departure from rules 18, 20, and 21. Accordingly it became the duty of the Kingston, even though in the first instance she had the right to rely upon the presumption that the Titania would perform her full duty, to either signal an alarm, or to stop and reverse her engine, if good seamanship so required. Her excessive speed and middle course in the river, in view of the Titania turning into the channel too near the east pier at an excessive speed, were reasonably clear indications that the latter vessel would in all probability omit conforming to her full duty. The faulty maneuvering of the Titania obligated the Kingston to careful and skillful seamanship to avoid injuring her, notwithstanding the failure of the burdened vessel to keep out of the way. The master of the Kingston, according to his own version of the collision, as I interpret it, had sufficient reason to believe the Titania, because of the position she was in, would be unable to properly and safely straighten in the channel while she was passing her. Upon this point the principles of the following cases are thought applicable: The New York, 175 U. S. 187, 20 Sup. Ct. 67, 44 L. Ed. 126; The Chicago, 125 Fed. 712, 60 C. C. A. 480; The Delaware, 161 U. S. 459, 16 Sup. Ct. 516, 40 L. Ed. 771.

If the Kingston had promptly stopped or reversed, or seasonably signaled the Titania, it is quite probable that the latter vessel would have maneuvered to avoid the collision. Such error on the part of the Kingston was not in extremis, as the presence of the Titania at that point and her close turn to the east pier was in no sense a surprise to her. Hence, in view of the circumstances, both vessels must be held at fault for the collision.

A decree may be entered, dividing the damages, but without costs.